**McGeever v. Tancredi**
*[Cite as 5 AOA 351]*

*Case No. 89-L-14-077*
*Lake County, (11th)*
*Decided August 24, 1990*

*Patricia J. Schraff, Petersen, Ibold & Wantz, 401 South Street, Chardon, Ohio 44024, for Plaintiff-Appellant.*

*B. Lawrence Allen, P.O. Box 470, 4076 Erie Street, Willoughby, Ohio 44094, for Defendants-Appellees.*

PRYATEL, J.

Appellees, Clara and Mario Tancredi, were the owners of real estate located at 52 South Doan Avenue in Painesville, Ohio. In 1986, appellees began to notice water seepage in the basement of their property. Consequently, appellee, Mario Tancredi, endeavored to waterproof the basement of the home.

In January 1987, appellees put their home up for sale. Although the basement had been repaired, evidence of previous water damage still existed in the residence. As appellee's realtor, Janice Lefelhoc, recalled, "it was evident that at some time there had been a problem with some water leakage. "*** You could see where the paint was plastered on part of the block wall, the paint has plaster on the block wall in the basement." Further, some of the basement paneling displayed water stains. Lefelhoc noted, however, that the floor and the carpeting of the basement were dry and "normal" feeling. When she inquired as to the origin of the water damage, Lefelhoc was informed that there had been problems with water seepage, but that the drainage system under the floor had been completely repaired.

In February of 1987, appellant, Daniel McGeever, along with his realtor, visited the property. Although appellant was impressed with the property, he was concerned by the appearance of water damage in the basement. Appellant asked Lefelhoc about the water damage and was told that there had been a problem, but that appellees had repaired the basement so that there were no more water seepage problems. After one subsequent visit to the property, appellant executed a purchase agreement to buy the property.

Appellant's purchase agreement contained, as a condition of purchase, a requirement that appellees provide a written guarantee for work performed to repair water leakage in basement. Guarantee to be for two (2) years from transfer date." When appellees accepted appellant's offer to purchase, they (appellees) prepared (through their real estate agent) an addendum to the agreement which superseded the condition contained in appellant's purchase offer. (This addendum, which in effect served as a counteroffer, was agreed to by all parties, therefore becoming the binding contractual language of the case *sub judice.*) This addendum stated:

"The seller Clara Tancredi of the property located at 52 S. Doan Ave. Painesville, Ohio 44077 does hereby guarantee the basement repair made to prevent water leakage for 1 (one) year from date of title transfer to the buyer Daniel L. McGeever:

"(1) excluding acts of God

"(2) providing buyer performs normal repair and maintenance *[sic]* to property for said 1 (one) year period.***"

Pursuant to the purchase agreement, appellant took title and possession of the 52 South Doan Avenue property on May 1, 1987.

Within one month of his ownership, appellant discovered water damage in his basement. The carpet on the basement floor had become wet and mildewed, the paneling had become wet, and water had accumulated on the basement floor in several spots. Further, appellant noted that some of the basement walls were wet and covered with water-filled bubbles of paint.

Appellant contacted Janice Lefelhoc, the appellees' real estate agent, on June 1, 1987, to view the water damage. Lefelhoc, after viewing the damage, contacted appellees, who were now living in Florida. Appellee, Mario Tancredi, informed appellant that he would be up to view the damage in six to eight weeks and would take care of the water problems then.

Appellant, fearing that severe structural damage could insure to his home during a potential two-month wait, and having already obtained three estimates for the cost of repairing the water damage, retained Ohio State Home Services, Inc. to repair and waterproof his basement. Ohio State Home Services, Inc. was not the least expensive of the waterproofing companies. However, the least expensive, a company called B-Dry, would only perform waterproofing services in the interior of the parameters of the house. (Ohio State Home Services, Inc. performed services to both the interior and exterior of the home.) The cost of Ohio State Home Services', Inc. services was $6,428.

During the installation of the Ohio State Home Services, Inc. system, appellant discovered

that the previously installed system was inadequately installed. Appellees had apparently installed a crock in their basement floor which was incapable of functioning correctly because there were no holes in the drain tile which would filter water to the crock. Further, appellees' system included incorrectly installed drain tile; the use of dirt rather than gravel to line pipes and filter water; the covering up of drain holes with concrete; and the tying of the waterproofing system to the sanitary sewer, rather than the storm sewer. Paul Nestor, the foreman for Ohio State Home Services, Inc., testified that it was his opinion that appellees' system could never have worked properly.

Appellee, Mario Tancredi, came to inspect appellant's home on June 14, 1987, two weeks after the water damage was reported to him. However, repairs had already been completed on the property by that time and appellant told appellee that the damage would cost $12,089 to fix (portions of the driveway and the porch were removed to install the waterproofing and needed to be replaced, as well, in addition to the waterproofing charges and the replacement costs of the carpet). The appellees refused to pay the claimed damages due. Appellant filed suit on July 8, 1987.

The case *sub judice* was assigned to arbitration, and a hearing was conducted on August 11, 1988. Judgment was rendered in appellant's favor. Appellees appealed and a trial *de novo* was held on January 18, 1989.

The trial court rendered judgment in favor of the appellees. In the trial court's opinion and judgment entry, it notes:

"Tancredi contends McGeever waived his right to enforce the guarantee by hiring his own con tractor to make the repairs, thus breaching the contract himself. McGeever counters that immediate action was necessary to avoid structural damage. However, McGeever never conveyed a sense of urgency to Tancredi. Structural repairs were not required by plaintiff's contractor nor did he testify to observing structural damage, even though in his opinion the water within the foundation blocks had accumulated over the past year.

"*** By procuring repairs without affording reasonable notice to seller that his proposed cure was unacceptable, absent exigent circumstances, buyer precluded him from making good on the guarantee, thus waiving his right to enforce it. ***"

Consequently, the trial court only awarded judgment for the appellant for $300, the cost of the carpeting which the court found to have been damaged despite appellees' guarantee. (The court further dismissed appellant's fraudulent misrepresentation claim as not being supported by sufficient evidence).

Appellant now timely appeals and propounds the following assignments of error:

"1. The trial court erred to the prejudice of appellant in finding a waiver of appellant's rights under the terms of the warranty contained in the addendum to the parties' purchase agreement.

"2. The trial court erred to the prejudice of appellant by failing to cons true the terms of the warranty contained in the addendum to the purchase agreement strictly against appellee, said addendum having been prepared by appellees' agent.

"3. The trial court erred to the prejudice of appellant by failing to find that appellees' failure to disclose the water leakage to appellant constituted fraudulent misrepresentation.

"4. The trial court erred to the prejudice of appellant by finding that appellants could have employed less costly means to cure the basement water leakage problem."

In appellant's first two assignments of error, he asserts that the trial court erred in holding that the appellant had waived his rights under the warranty contained in the addendum by authorizing repairs to the property before the appellees could perform them. Appellant analogizes the case *sub judice* to *Tonsetic v. Brennan* (June 10, 1988), Trumbull App. No. 3853, unreported.

In *Tonsetic, supra,* this court was presented with a scenario in which the parties to a real estate contract incorporated a limited express warranty which guaranteed that, under normal conditions and maintenance, the basement of the property would remain free of water for a one year period. When water damage did occur, the buyers procured estimates and sent them to the sellers. This court determined that the buyers had performed actions which exceeded normal maintenance and enforced the guarantee.

Appellant also claims that, by authorizing the waterproofing on his property, he was simply attempting to mitigate the damage to his property, as required by *Foust v. Valleybrook Realty Co.* (1981), 4 Ohio App. 3d 164. Although *Foust* does not require a party to make extraordinary efforts to minimize his damages, "[o]rdinary and reason-

able care, diligence and prudence are the measure of the duty [to mitigate]." *Id.* at 168.

The trial court, however, did not view appellant's actions as pertaining to the mitigation of damages. instead, the trial court appears to have found that appellant, by acting before appellees had a chance to repair the property, had breached the contract. Consequently, appellees had no duty to repair and appellant could recover no damages, save for the $300 attributable to the damaged carpet.

The genesis of this holding appears to come from condition precedent case law such as *Suter v. Farmers Fertilizer Co.* (1919), 100 Ohio St. 403, 411, which states that "*** where the liability depends upon a condition precedent one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it." This court has recently considered a case, similar to *Suter,* in *Livi Steel v. Bank One, Youngstown, NA* (Dec. 8, 1989), Trumbull App. No. 88-T-4133, unreported. *Livi Steel* quotes Corbin for the proposition that:

"A repudiation or other total breach by one party enables the other to get a judgment for damages or for restitution without performing acts that would otherwise have been conditions precedent. It is no longer necessary for the plaintiff to perform or tender performance. ***" (Citations omitted.) *Id.* at 6-7.

The trial court apparently reasoned that all parties had assumed that appellee, Mario Tancredi, would take care of any problems and make necessary repairs to the property when he arrived in Painesville at some indeterminate date within two months after notice of the water damage. The court concluded that, by contracting with others to make repairs, appellant deprived appellee, Mario Tancredi, the opportunity to perform the repairs himself. Consequently, as the condition precedent to Tancredi 's duty to perform (the existence of water damage) had been eliminated without Tancredi's ability to tender his performance, it was no longer necessary for appellee to perform his services or confer benefits on appellant.

This reasoning is fatuous. The "plain import" of the addendum is that appellees agreed to guarantee the efficacy of their waterproofing job for one year after appellant took title to the property. There is no dispute that water damage occurred, nor are there any assertions that this damage was caused by an act of God or by failure to perform maintenance and upkeep. Consequently, the warranty has been breached and appellees are required to pay for the damages to the appellant's home.

Moreover, nowhere does the addendum require that the appellant allow appellees to repair any damages to the basement themselves, or through their agents, before attempting to contract the waterproofing job himself. Such an interpretation would not only have to be based on language nonexistent in the addendum, but would have also left appellant in a position of having to wait until appellees felt beneficent enough to come to Painesville to remedy the damage. Appellees would not have even been bound by their own six to eight week deadline; instead, they could have put off remedying the water damage situation, under the trial court logic, indefinitely. (The arrival of appellee, Mario Tancredi, in Painesville is, in this context, a fortuity.) Such an approach violates not only rules of contractual construction(since it requires the imposition of entire mythical requirements) but also common sense.

The correct scenario is suggested by the holdings in *Foust* and *Tonsetic.* Appellant, in contracting for waterproofing repairs, simply acted to protect his property from further damage and expense. Such action is consistent with that required by *Foust, supra.* Nowhere in the addendum is appellant compelled to "[convey] a sense of urgency" to appellees as a condition precedent to motivating appellees to repair the water damage. Further, nowhere in the addendum exists language requiring appellant to wait until appellees chose to remedy the water damage problem for fear of waiving his right to repairs he specifically contracted for.

Appellant's first assignment is with merit.

The trial court further states that the language of the addendum is plain in that it provides that appellees only guaranteed the effectiveness of the repairs. "Proof that a problem remained, related to the prior repairs, confirms a breach of the guarantee," the judgment entry states, holding that appellant's acts in repairing any damage before appellees saw it firsthand, obviated appellees duty to repair, or compensate appellant for the repairs.

Again, however, in its quest for the "plain import" of the addendum, the trial court has added requirements to the contractual language that nowhere exist in the agreement executed by the parties. The addendum nowhere requires that appellees be shown the damage themselves prior to the arising of any duty on their part to

repair same. The addendum, which is silent on the question of establishment of proof of damages (and must consequently be resolved against the appellees, who wrote the provision, via their agent, see, *e.g., Nosse v. Vulcan Basement Waterproofing, Inc.* (1973), 35 Ohio Misc. 1) could as easily be satisfied by the presentation of expert testimony or by the adducement of photographs, both of which occurred at trial.

Examination of the addendum reveals that, while the language is indeed "plain," it does not lend itself to the "plain import" interpretation put forward by the trial court. Consequently, appellant's second assignment is with merit.

In his third assignment of error, appellant argues that the trial court erred in dismissing his fraudulent misrepresentation action for failure to adduce sufficient evidence. Appellant states that there was sufficient evidence to demonstrate fraudulent misrepresentation and that he should not only receive damages for appellees' action, but also should receive attorney fees.

In support of his assignment, appellant has directed this court's attention to a number of unreported cases, all of which assert that misinforming a potential buyer as to the extent of the water damage problem in a home constitutes a fraudulent misrepresentation. See, *e.g., Alpern v. Purcell* (Feb. 2, 1981), Trumbull App. No. 2863, unreported.

However, while this court agrees with appellant's analysis of this case law generally, we also note that appellant failed to adduce evidence that would lead to a finding of fraudulent misrepresentation in the case *sub judice.* As appellees note, the elements of fraudulent misrepresentation generally are an intentional statement, made by the seller, of a material fact, which the seller expects the buyer to rely upon, and which the buyer does rely upon in purchasing the house, to his/her detriment or injury. See, *e.g., Miles v. McSwegin* (1979), 58 Ohio St. 2d 97. Appellant has failed to demonstrate a material misrepresentation. Appellees stated that the basement had experienced water damage and that they had fixed it. There is no evidence on the record that contradicts these statements. The fact that appellees apparently did a poor job in waterproofing the basement in no way causes their statement, that they endeavored to repair the basement, to become a fraudulent misrepresentation.

Appellant's third assignment of error is without merit. As a result, appellant's claim for attorney fees, which is predicated on a finding of fraudulent misrepresentation (at a minimum) is similarly without merit.

In appellant's final assignment of error, he argues that the trial court erred in determining that appellant could have installed a less costly method of water control to prevent the water leakage problem. Appellant argues that the trial court's statement, that testimony from Ohio State Homeowners suggested that he could have derived equal benefit at substantially lower cost by correcting the defects in the existing system, was not supported by the record. instead, appellant claims that Ohio State's foreman, Paul Nestor, testified that appellee's system was nonfunctional, that it could not have worked, and that no witness stated that the system could have been salvaged.

However, as appellees notes, evidence was adduced that there were three bids submitted for the waterproofing job, one of which (B-Dry) was lower in price than Ohio State's. Upon remand, it will be incumbent upon appellant to demonstrate why a more expensive system was necessary to protect his home in order to recover the difference between the lower priced water control system and the one selected.

In that this court agrees with appellant that the record reveals no statements by Ohio State Home Owners as to the feasibility of the salvaging of the appellees' water control system, appellant's assignment has merit. The area of damages will have to be more thoroughly addressed on remand.

Therefore, for the reasons set forth in this opinion, the judgment of the trial court is reversed only with respect to the first, second and fourth assignments. This cause is, therefore, remanded for consideration of the issues discussed herein, save for the issue of fraudulent misrepresentation.

*Judgment reversed and*
*cause remanded.*

CHRISTLEY, P.J., and MAHONEY, J., concur.